363 So.2d 690 (1978)
STATE of Louisiana
v.
Francis BABBITT.
No. 61778.
Supreme Court of Louisiana.
October 9, 1978.
Rehearing Denied November 9, 1978.
*692 Michael S. Wolf, McCollister, McCleary, Fazio, Mixon & Holliday, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Marilyn C. Castle, Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
Francis B. Babbitt, Jr. was charged by bill of information with possession with intent to distribute marijuana in violation of La.R.S. 40:966A. Defendant waived a trial by jury and elected to be tried by the court. Prior to trial, defendant filed motions to discover the identity of the informant and to suppress evidence seized from his residence pursuant to a search warrant. After hearings, the trial judge denied the motions. Shortly after trial on the merits had commenced, the state amended the information to charge defendant with cultivation of marijuana. At this point in time, defendant entered a plea of guilty to the amended charge, expressly conditioned (and so accepted by the trial judge) upon his right to obtain appellate review of the pre-plea rulings of the trial judge denying his motions to discover the informant's identity and to suppress the evidence as well as refusing to permit him to ask certain questions of the affiant at the pretrial hearings. Defendant also contends that he reserved the right to obtain appellate review of the overruling of his objection to the state's amendment of the information at the time the guilty plea was entered. State v. Crosby, 338 So.2d 584 (La.1974). The trial judge suspended imposition of sentence for one year and placed defendant on probation under the supervision of the division of probation and parole. On appeal, defendant relies on twenty assignments of error for reversal of his conviction and sentence.
The assigned errors can be grouped under four basic contentions: the trial judge erred in (1) denying his motion to suppress evidence; (2) denying his motion to discover the informant's identity; (3) refusing to allow him to ask certain questions of the affiant at the pretrial hearings; and (4) overruling his objection to the state's amendment of the bill of information.
Two separate pretrial hearings were conducted. Carolyn Sue Carpenter and Ann Covington testified for the defense. Defendant testified on his own behalf. Officer Michael Ray Barnett testified for the state. Ms. Carpenter testified that "Moffett" was the name of her ex-husband and "Kaki" was her nickname. She testified that she knew defendant but never resided or lived at his residence. She also accounted for her whereabouts on Friday, June 25, 1976. She denied that she was ever in possession of any marijuana at defendant's residence. She also testified that she had not been at defendant's residence for about two and a half weeks prior to June 25, 1976. She admitted that she had been to his residence since that date. She also admitted that she was on probation for having been convicted of possession with intent to distribute marijuana. Ms. Covington testified that she worked with Ms. Carpenter and was a friend of hers. Her testimony corroborated that of Ms. Carpenter as to the latter's activities on June 25, 1976. Defendant denied that Ms. Carpenter had ever lived or resided with him and confirmed that she had not been at his residence for some two and a half weeks prior to June 25, 1976. He specifically denied that Ms. Carpenter had ever possessed any marijuana while at his house.
Officer Barnett, who was in charge of the narcotics section of the sheriff's office, testified *693 that he had procured a warrant to search defendant's residence on Saturday, June 26, 1976. He stated that the information in the affidavit supporting the issuance of the warrant was secured from a reliable confidential informant who had worked with him for a number of years but less frequently during the past several years. He stated that he placed "on or about June 25, 1976" in the affidavit as the date the informant observed Carolyn "Kaki" Moffett in possession of the marijuana at defendant's residence, rather than the exact date, in order to protect the identity of the informant. However, he noted that the exact date was either a day or two before or after June 25, 1976. He further stated that the informant was paid for his information on a per case basis. Officer Barnett admitted that he did not corroborate the information received from the informant as to the occupants of the residence by checking the utility records or license plates of cars located in the vicinity of the residence in order to confirm who lived there. His explanation was that, since the residence was the last house on a dead-end road, he was afraid of being observed. Also, the information was received on Saturday and his contact at the utility company did not work on Saturdays. During the course of his testimony, state objections to defense questions which might have led to the identity of the informant were sustained by the trial judge.
The record reflects that a warrant was issued to search the residence of defendant on June 26, 1976. The affidavit reciting the facts establishing probable cause for the issuance of the search warrant was executed by Officer Michael Ray Barnett. The affidavit contains the following representations:
. . . That probable cause does exist for the issuance of a search warrant authorizing the search of a residence occupied by Carolyn Moffett, also known as `Kaki,' and a white male known as `Frances,'. . . where a quantity of controlled, dangerous substance, to wit: marijuana is believed to be secreted or concealed, and such probable cause is based upon the following: Affiant informs the Court that on this date, being June 26, 1976, affiant was contacted by a confidential and reliable informant who has been working under the direct supervision of affiant for the past three (3) years and who has provided information which has led directly to the arrest and convictions of at least twenty (20) persons and the seizure of contraband drugs in East Baton Rouge Parish, . . . contacted affiant and advised that he, being said informant, had occasion to be in the residence of Carolyn `Kaki' Moffett and a white male known only as `Frances'. . .
Affiant further informs the court that on the above occasion, being on or about June 25, 1976, the above Carolyn Moffett was in possession of pound quantities of green vegetable material contained in brown paper bags which the above Carolyn Moffett identified to be marijuana.
Affiant further informs the Court that the above Carolyn Moffett was arrested by the East Baton Rouge Parish Sheriff's Narcotics Division in 1970 for possession of L.S.D., codine, and marijuana, and again arrested by affiant in 1972 for possession of marijuana and was convicted for same.
First, defendant contends the trial judge erred in denying the motion to suppress the evidence. In support of this contention, he seeks to impeach the veracity of the affidavit supporting the issuance of the search warrant.
It is well established that the credibility of the affiant's informant or the correctness of the information furnished by the informant may not be attacked on a motion to suppress. State v. Tassin, 343 So.2d 681 (La.1977) (on rehearing); State v. Giordano, 284 So.2d 880 (La.1973); State v. Melson, 284 So.2d 873 (La.1973). However, the credibility of the affiant himself may be traversed on a proper showing of "a genuine issue on the affiant's veracity supported by convincing allegations of fact which, if proven, would establish the falsity of the affidavit." State v. Cox, 330 So.2d 284, 292 *694 (La.1976) (on rehearing); State v. Giordano, supra. We stated in Melson:
. . . There are . . . factors which justify treating the veracity of the affiant and the veracity of his informer differently. There is sometimes a need to protect the identity of informers. But see Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). Criminal activity in today's society seems to demand speed and efficiency in police work, consistent with constitutional standards; the constitutional prohibition against the issuance of search warrants is relaxed when there is probable cause for a magistrate to act, a finding reached with much less reliable evidence than real and actual cause.
See also McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967).
In State v. Rey, 351 So.2d 489 (La.1977), we first observed that minor inaccuracies in the affidavit may not affect the validity of the search warrant. We further stated that, when faced with an affidavit containing inaccurate statements, the court will excise the inaccurate statements and then examine the residue to determine if it supports a finding of probable cause. If, however, the misrepresentations were intentionally made, a warrant based on such an affidavit must be quashed.[1]
In the instant case, we are satisfied that the trial judge properly denied the motion to suppress based on the alleged misrepresentations in the supporting affidavit. Specifically, defendant alledged that the affidavit contained three misstatements of fact: (1) Carolyn "Kaki" Moffett resided in the house in question with defendant; (2) a confidential informant was present in the house on or about June 25, 1976; and (3) Carolyn Moffett was in possession of pound quantities of marijuana at the residence at that time.
At most, the first of these alleged misstatements, attributable to affiant, was a reasonable mistake made in good faith. Moreover, Carolyn "Kaki" Moffett's status as a resident, occupant or visitor has no bearing on a finding of probable cause. Excising the statement, ample probable cause existed for the issuance of the warrant based upon the information supplied by the informant. Franks v. Delaware, ___ U.S. ___, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); State v. Rey, supra.
The other two alleged false statements relied upon by defendant to destroy probable cause were not those of the affiant, and thus did not go to the integrity of the affidavit. Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964). Defendant has the right only to traverse allegations of the affiant upon a proper showing; he may not controvert those of the confidential informant. State v. Melson, supra; McCray v. Illinois, supra.
La.Code Crim.P. art. 162 provides in pertinent part:
A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.
We have held that probable cause exists when the facts and circumstances within the affiant's knowledge and of which he has reasonably and trustworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe that *695 an offense has been committed. State v. Richards, 357 So.2d 1128 (La.1978), and cases cited therein.
The United States Supreme Court has fashioned a two-pronged test for determining if an affidavit based upon hearsay has established probable cause: the reliability of both the informant and his information must be demonstrated in the affidavit. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The reliability of the informant herein is uncontested. Defendant does, however, dispute the reliability of the informant's information. We have held that this may be established by (1) the informant's personal observation, or (2) the recitation of the underlying facts upon which the informant based his conclusions. State v. Smith, 350 So.2d 1178 (La. 1977); State v. Paciera, 290 So.2d 681 (La. 1974).
Affidavits must be given a commonsense and realistic interpretation; and a doubtful or marginal case will be resolved in favor of upholding the validity of the warrant. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). Here, the informant notified the affiant that on or about June 25, 1976, he visited defendant's residence, and that "on the above occasion . . . Carolyn Moffett was in possession of pound quantities of green vegetable material . . . which [she] identified to be marijuana." Interpreting this language in the commonsense fashion mandated by Ventresca, we conclude that while the informant was present in defendant's residence, he personally observed therein the marijuana subsequently seized.
Defendant's second major contention is that the trial court erred in denying his motion to discover the identity of the affiant's informant. He argues that under Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) and the constitutionally protected rights to confrontation and cross-examination, he is entitled to this information.
The informer privilege is the privilege of withholding the identity of an informant who supplies information to law enforcement officials concerning crime. It is founded upon public policy and seeks to advance the public interest in effective law enforcement. Roviaro v. United States, supra. This court has consistently held that a confidential informant's identity will be divulged only under exceptional circumstances. State v. Robinson, 342 So.2d 183 (La. 1977); State v. Russell, 334 So.2d 398 (La. 1976); State v. Thorson, 302 So.2d 578 (La. 1974). The general rule is that the burden is upon the defendant to demonstrate exceptional circumstances and much discretion is vested in the trial judge on the question of whether the circumstances warrant disclosure. State v. Robinson, supra; State v. Russell, supra; State v. Dotson, 260 La. 471, 256 So.2d 594 (1971), cert. denied, 409 U.S. 913, 93 S.Ct. 242, 34 L.Ed.2d 173 (1972); State v. Greenbaum, 257 La. 917, 244 So.2d 832 (1971).
Unlike Roviaro, no evidence was presented that the informant set up and participated in the crime as an aid to law enforcement officers. In State v. Dotson, supra, we determined that only when the evidence shows that the informant, in cooperation with the police, participated in the crime should the identity be disclosed to defendant. In such cases, the informant does more than furnish a tip that enables the police to make an arrest or search. While working with the police, he takes part in the illegal transaction itself. See Roviaro v. United States, supra; State v. Dotson, supra; State v. Robinson, supra.
Moreover, the Roviaro case involved the informant's privilege, not at a preliminary hearing to determine probable cause for a search, but at the trial itself where the issue was the fundamental one of innocence or guilt. According to the government's evidence in that case, the informant had been an active participant in the crime. Hence, the disclosure of the informant's identity was relevant and helpful to the defense of the accused and was essential to a fair determination of the cause. Here, *696 the record is clear that defendant requested disclosure of the informant's identity only in connection with his attack on the affidavit supporting the search warrant. Never did defendant indicate why the informant's testimony would help establish his innocence. Thus, disclosure of the informant's identity was not warranted. Rugendorf v. United States, supra.
Neither is defendant's right to confrontation and cross-examination violated by our recognition of the informant's privilege in this case. Such a contention was summarily and unequivocally rejected by the United States Supreme Court. McCray v. Illinois, supra; Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).
Defendant next contends that the trial judge erred in preventing him from asking affiant certain questions during the pretrial hearings. We conclude that the trial judge did not err in disallowing these questions, all of which appear to have been an attempt to ascertain the identity of the informant. Pending a conclusive determination that disclosure of the identity was warranted, allowance of such questioning would have been improper. In any event, we have concluded above that defendant was not entitled to know the identity of the informant.
Finally, defendant contends the trial judge erred in overruling his objection to the state's amendment of the information during the course of trial. This contention is without merit.
First, it is doubtful from the record whether defendant did not first consent to the amended charge to which he pled guilty. It was only at a subsequent hearing that the record was amended to reflect his objection. Moreover, it is also doubtful from the record that defendant's guilty plea was expressly conditioned upon his right to obtain appellate review of the overruling of his objection to the state's amendment of the information. State v. Crosby, supra. In any event, when an indictment is amended, unless a defendant moves for a continuance on the ground that he is prejudiced thereby and requires additional time to prepare his defense, he cannot later contend that he was prejudiced by the amendment. La.Code Crim.P. art. 489; State v. Williams, 347 So.2d 184 (La.1977). In the instant case, defendant did not seek a continuance. Hence, he has no cause to complain.

DECREE
For the reasons assigned, the conviction and sentence are affirmed.
DIXON, J., concurs.
DENNIS, J., concurs, being of the opinion that the statement of the informer privilege is overly broad.
NOTES
[1] In Franks v. Delaware, ___ U.S. ___, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the United States Supreme Court specified the circumstances under which a defendant has a constitutional right to challenge the truthfulness of factual statements made in an affidavit supporting the warrant. To mandate an evidentiary hearing on this issue, there must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. However, if the allegedly false statements are not necessary to a finding of probable cause, then no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the fourth amendment, to a hearing. Thus, it is apparent that the Louisiana law in this area fully accommodates the constitutional safeguard set forth in Franks. It was also noted in Franks that "[t]he deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant."