409 So.2d 603 (1982)
STATE of Louisiana
v.
Berlon Karl CRAIN and Darrell Spurlock.
No. 81-KA-1464.
Supreme Court of Louisiana.
January 29, 1982.
*604 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Marion B. Farmer, Dist. Atty., Abbott J. Reeves, William J. Knight, Peter J. Garcia, Asst. Dist. Attys., for plaintiff-appellee.
S. Austin McElroy, Covington, for defendant-appellant.
HALL, Justice Ad Hoc.[*]
Appellants, Berlon Karl Crain and Darrell Spurlock, were jointly charged with armed robbery in violation of LSA-R.S. 14:64 and pled not guilty. After a hearing on appellants' motions to suppress confessions made by each of them after they were arrested, the motions were denied. Defendant Crain was tried before a jury and was found guilty. Defendant Spurlock withdrew his plea of not guilty and pled guilty. Each defendant was sentenced to serve 15 years at hard labor without benefit of probation, parole, or suspension of sentence.
On appeal appellants rely upon one assignment of error for the reversal of their convictions and sentences.[1] They contend that the confessions were the result of illegal, warrantless arrests without probable cause and that the trial court erred in denying their motions to suppress the confessions.
At noon or a few minutes after on March 9, 1979 an armed robbery took place at the rural home of Mrs. and Mrs. Walter A. Burris, an elderly couple. Two young black males knocked at their door, stated they were from Chicago and had been deer hunting with their dogs, and asked for a drink of water. As they were being given drinks of water a third young black male came from around the side of the house carrying an old taped-up single-barrel shotgun, announced that this was a stick-up, and ordered the couple to get up next to the wall. While one of the young men held the gun on the couple the other two went into the bedroom and took money from Mr. Burris's billfold and then the three left the house on foot. Mrs. Burris telephoned the police through a number connected with some sort of alarm system and a deputy who was in the area arrived at the house within a very few minutes.
Mr. and Mrs. Burris gave investigating officers a description of the robbers, whom they did not recognize or know. They informed the officers of an incident which occurred earlier that morning while they were traveling home in their automobile on the Hackley Highway. At an intersection of the highway several miles from their home they saw several (three according to Mrs. Burris) young black males standing *605 near the highway and one of them laid down across the highway in the path of the automobile in an apparent effort to stop the automobile. Mr. Burris drove around the young man lying down to avoid hitting him and then proceeded home. The couple thought the young men who robbed them were probably the same persons they encountered on the highway. The incident on the highway occurred in front of or close to defendant Crain's home.
During the course of their investigation that afternoon, the officers talked to Clea Magee who had been seen driving in the vicinity of the Burris home. Magee informed the officers that within a few minutes of the time of the robbery he saw three young black males whom he identified as Crain, Spurlock, and Prentiss Magee, walking along the highway within a quarter of a mile of the Burris home and that the three young men attempted to get a ride with him.
Officers went to Spurlock's home after dark between 7:30 and 8:30 p. m. They spoke to his father who brought Spurlock outside. Spurlock, 19 years of age, was advised that he was under arrest, was advised of his rights, and was taken to the Washington Parish Sheriff's Office in Franklinton.
The officers also went to defendant Crain's home but he wasn't there. The officers asked his mother to have him call when he came in. Crain, 18 years of age, called in that evening and deputies went out and got him and took him to the sheriff's office.
The third suspect, Prentiss Magee, a 16-year-old juvenile, was also brought to the jail and all three were questioned in separate offices. The gun was recovered from Magee's home at about 10:00 in the evening.
A consent to questioning form was signed by Spurlock at 7:55 p. m. and another identical form was signed by him at 10:26 p. m. A tape recorded statement was taken from Spurlock at 10:41 p. m. in which statement he fully confessed to the robbery and implicated Crain and Magee. The recording reflects that Spurlock was informed of his rights and voluntarily consented to questioning.
A form acknowledging that he had been advised of his rights was signed by Crain at 10:30 p. m. A tape recorded statement was taken from Crain at 12:06 a. m. in which statement he fully confessed to the robbery. The recording reflects that he was advised of his rights and consented to the questioning.
A confession obtained as a direct result of an arrest made without probable cause should be suppressed. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). When the defendant challenges the admissibility of a confession on the ground that it was the result of an arrest made without probable cause, the burden of showing admissibility rests upon the prosecution. Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). This affirmative showing must be made by establishing that probable cause existed to arrest the defendant or, if the arrest was unlawful, by showing that the causal connection between it and the subsequently obtained confession was so attenuated that the confession could not properly be considered as a fruit of the illegal arrest. Wong Sun v. United States, supra; State v. Scott, 355 So.2d 231 (La.1977).
Any lawful arrest whether warrantless or pursuant to an arrest warrant must be based upon probable cause to believe that the person arrested has committed or is committing an offense. State v. Scott, supra. Although the measure of probable cause does not require that the arresting officer have sufficient proof to convict the accused, the arrest may not be predicated upon mere suspicion. State v. Scott, supra; State v. Randolph, 337 So.2d 498 (La.1976). Probable cause is to be judged by the probabilities and practical considerations of everyday life on which average men, particularly average police officers, can be expected to act. State v. Smith, 377 So.2d 1220 (La.1979). One of the most important elements in determining *606 whether probable cause existed is satisfied when the police know a crime has actually been committed; when the arrest is made when the police do not know that a crime has been committed, more and better evidence is needed to prove that probable cause exists for the arrest than is the case when the police know a crime has been committed. State v. Johnson, 363 So.2d 684 (La.1978).
The question in this case is, then, whether there was probable cause to arrest Spurlock and Crain at the time they were arrested and taken to the jail. We conclude there was probable cause, as did the district judge whose conclusions as to probable cause are entitled to great weight. State v. Nicholas, 397 So.2d 1308 (La.1981).
The officers knew that a crime had been committed. They knew that Mr. and Mrs. Burris had been robbed at gunpoint by three young black males at their home shortly after noon. The officers had descriptions of the culprits given to them by Mr. and Mrs. Burris. They had information from the Burrises that the three robbers were probably the same young men who the couple had seen down the road earlier that morning and who had apparently at that time tried to stop them in their car. They knew that the three young men had left the Burris home on foot. The officers had information from a witness that the defendants and another young black male were seen on foot about a quarter mile from the scene of the robbery within a very minutes of the time of the robbery. The general description of the three robbers given by the victims matched the general description of the three suspects. The officers knew the incident where the young men tried to stop the Burris car occurred in front of or close to Crain's home.
The information that the officers had was sufficient to justify reasonable men of average caution in believing that the three young men, Crain, Spurlock, and Magee, seen together on foot close to the scene of the robbery and close in point of time with the robbery, were the same three young men who committed the robbery. The officers had probable cause to make the arrests. The confessions were not, therefore, the fruits of illegal arrests and were admissible as evidence, and the motions to suppress were properly denied.
The defendants' convictions and sentences are affirmed.
NOTES
[*] Judges Pike Hall, Jr., Charles A. Marvin, and Jasper E. Jones of the Court of Appeal, Second Circuit, participated in this decision as associate justices ad hoc, joined by Chief Justice John A. Dixon, Jr., and Associate Justices Walter F. Marcus, Jr., Fred A. Blanche, Jr., and Harry T. Lemmon.
[1] Appellants made other assignments of error which have not been argued in brief and are, therefore, considered abandoned. State v. Blanton, 325 So.2d 586 (La.1976).

It is not clear from the record, which does not contain a transcript of the proceedings at which defendant Spurlock changed his plea, that he reserved his right to urge his motion to suppress on appeal. See State v. Crosby, 338 So.2d 584 (La.1976). However, since the state has not questioned defendant's right to assert this assignment of error on appeal and since we have determined that the assignment has no merit, the question of defendant Spurlock's reservation of rights in this regard has not been specifically determined and passed on by the court.